684 F.Supp. 1500 (1988)
LANDMARK BANK, Plaintiff,
v.
Terrence J. McGLINN, et al., Defendants/Third-Party Plaintiffs,
v.
Donald L. DAVENPORT, et al., Third-Party Defendants.
No. 86-1505 C (5).
United States District Court, E.D. Missouri.
April 27, 1988.
*1501 Richard D. Lageson, Stephen L. Kling, Jr., St. Louis, Mo., for plaintiff.
Coburn, Croft & Putzell, John R. McFarland, James L. Fogle, Kenneth J. Mallin, St. Louis, Mo., for McGlinn and Oaks Inv.
Michael A. Gross, Clayton, Mo., for third-party defendants.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff Landmark Bank brought suit against defendants Terrence J. McGlinn and Oaks Investment Group (Oaks) seeking recovery of funds paid by Landmark Bank on a letter of credit issued on behalf of third-party defendants Donald and Mary Jane Davenport. On November 30, 1987, the date this case was set for trial, a settlement was reached between Landmark Bank and McGlinn and Oaks. The Court proceeded with the trial of the third-party action between defendants/third-party plaintiffs McGlinn and Oaks and third-party defendants Donald and Mary Jane Davenport. This Memorandum constitutes the Court's findings of fact and conclusions of law for the purpose of Fed.R.Civ.P. 52(a).

I. Findings of Fact.

The facts giving rise to this action involve a series of financial transactions among Landmark Bank of Ladue, Landmark Bank of Sunset Hills, McGlinn and Oaks, American Bank and Trust Co. of Pennsylvania (ABT) and Mr. and Mrs. Donald Davenport.
Plaintiff Landmark Bank is the successor in interest of Landmark Bank of Ladue, Landmark Bank of Sunset Hills, and Landmark Bank of South County. In 1984, Landmark Bank of Sunset Hills and Landmark Bank of South County merged and, thereafter, the banks continued to transact business as Landmark Bank of South County. In 1985, Landmark Bank of Ladue, Landmark Bank of South County and other Landmark Bank affiliates merged and, thereafter, the banks continued to transact business as Landmark Bank.
During 1983 and 1984, Daniel Jasper was senior vice president of Landmark Bank of Ladue, and William Hayse was the president and chief executive officer of Landmark Bank of Sunset Hills and, after the merger, Landmark Bank of South County. Leanna Rodenmeyer was the assistant vice president of Landmark Bank of Sunset Hills. Her immediate supervisor was Hayse. S. Lee Kling is the chairman of the board of Landmark Bancshares, which is the holding company of Landmark Bank, and he held that position in 1983 and 1984.
Third-party plaintiff McGlinn is the sole shareholder of McGlinn Capital Management, Inc. (MCM). McGlinn is also the general partner of Oaks Investment Group, a limited partnership. At all relevant times, James A. Walker was the senior vice president of MCM, whose responsibilities with respect to Oaks were limited to communications with its limited partners and providing administrative services for the limited partnership.
In 1980, Donald Davenport placed approximately three million dollars into an account at ABT to be managed by MCM. These funds were distributed to a custodial account for purposes of general investment by MCM, and to a tax account for purposes of payment of the Davenports' income tax liability. On September 19, 1980, Donald Davenport purchased a limited partnership interest in Oaks for $250,000. In January of 1982, Donald Davenport conveyed his interests in the custodial account at ABT and the capital account in Oaks to Mary Jane Davenport.
In early 1983, Donald Davenport settled a pending litigation dispute. By the terms of the settlement, he was required to pay Pan American Industries, Inc. (Pan Americn) the sum of $225,000 over the next three years. To secure payment, on January 20, 1983, Landmark Bank of Ladue issued three irrevocable letters of credit in favor of Pan American in the amounts of $50,000 (which expired on January 31, 1984), $75,000 (which expired on January *1502 31, 1985), and $100,000 (which expired on January 31, 1986).
To secure the repayment of the letters of credit, the Davenports entered into an agreement assigning Mary Jane Davenport's interest in the capital account in Oaks to Landmark Bank of Ladue. The letters of credit were also secured by a deed of trust on a piece of real estate located at 14 Countryside Lane in St. Louis. That deed of trust was later released by Landmark Bank. On January 20, 1983, Landmark Bank of Ladue and Oaks entered into an agreement by which Oaks, by its general partner McGlinn, acknowledged the assignment of Mary Jane Davenport's interest in the capital account in Oaks to Landmark Bank of Ladue.
In the fall of 1983, Davenport wanted to relocate his business, Eagle Converting Corporation to St. Louis. On September 17, 1983, Landmark Bank of Sunset Hills opened for business with Hayse as its president and chief operating officer. The first major factual dispute between the parties concerns the establishment of Davenport's business relationship with Landmark Bank of Sunset Hills. Interestingly, that dispute is most evident by comparing the proposed findings of fact of McGlinn and Oaks prior to their settlement with Landmark Bank to their post-trial proposed findings of fact. First, the proposed findings of fact filed on November 23, 1987 prior to trial and prior to the settlement agrement between Landmark Bank and McGlinn and Oaks are as follows:
30. In order to finance Eagle's relocation and promote business for Landmark Bank of Sunset Hills, Kling suggested to Davenport, who was a member of the Board of Directors, that Davenport consolidate his bank business scattered among the affiliated Landmark Banks to Landmark Bank of Sunset Hills. In addition, Kling suggested to Davenport that Hayse should handle all of his and Eagle's banking needs, including loans and letters of credit.
31. Acting on Kling's suggestion, Davenport established a banking relationship with Landmark Bank of Sunset Hills and Hayse became his and Eagle's personal banker. In addition, Hayes (sic) was informed by Jasper and Davenport of the Conditional Assignment of Partnership interest to Landmark Bank of Ladue of M.J. Davenport's capital account in Oaks.
32. At this time, both Kling and Hayse represented that all of Davenport's and Eagle's banking business, including the Conditional Assignment of Partnership Interest to Landmark Bank of Ladue of M.J. Davenport's capital account in Oaks, would be transferred and, thereafter, transacted through Landmark Bank of Sunset Hills.
Now compare the foregoing proposed findings of fact with those submitted by McGlinn and Oaks on December 14, 1987, after the trial, and after they had settled their claim with Landmark Bank as follows:
30. In order to assist in the relocation of Eagle, Davenport established a banking relationship for Eagle with Landmark Bank of Sunset Hills.
31. Notwithstanding the testimony of Donald Davenport, who the Court finds to be not credible, Kling did not suggest at any time to Davenport, who was a member of the Board of Directors of Landmark Bancshares Corporation, that Davenport consolidate his bank business scattered among the Landmark Bank affiliates to Landmark Bank of Sunset Hills. In addition, Kling did not suggest at any time to Davenport that Hayse would handle the obligations of Davenport and M.J. Davenport with respect to the letters of credit held by Pan American. The uncontroverted evidence at trial established that no one from Landmark Bancshares Corporation, Landmark Bank of Ladue, Landmark Bank of Sunset Hills, Landmark Bank of South County, or Landmark Bank told Davenport that Hayse would be responsible for all of Eagle's or Davenport's bank business.
The importance of this dispute is that it bears directly on whether Donald Davenport knew or should have known that the assignment of Mary Jane Davenport's capital account in Oaks was with Landmark *1503 Bank of Ladue rather than Landmark Bank of Sunset Hills. Further elaboration will be made on this issue as the facts develop.
In late 1983 and through July 1984, the parties were involved in other financial transactions as well. In November 1983, Mary Jane Davenport assigned her interest in the ABT custodial account to Landmark Bank of Sunset Hills as security for a letter of credit required by Eagle to purchase a piece of equipment. On January 30, 1984, Donald and Mary Jane Davenport executed personal guarantees to secure any credit transactions undertaken by Landmark Bank of Sunset Hills for the benefit of Eagle. Thereafter, on February 23, 1984, Rodenmeyer wrote a letter to ABT releasing Mary Jane Davenport's custodial account that had been conditionally assigned to Landmark Bank of Sunset Hills.
The next major dispute between McGlinn and Oaks and the Davenports concerns the assignment and release of Mary Jane Davenport's capital account in Oaks. Once again, the dispute is most apparent when comparing the proposed findings of fact of McGlinn and Oaks prior to the settlement with Landmark with those filed later. First, those filed on November 23, 1987 state that:
38. In January 1984, Hayse indicated to Davenport that his personal investment in Eagle should be increased. Davenport, however, indicated that he did not have sufficient unencumbered personal funds to increase his investment unless Landmark Bank released its conditional assignment on the funds available in M.J. Davenport's capital account in Oaks.
39. Hayse indicated to Davenport that the conditional assignment would be transferred to Landmark Bank of South County, and that he would release the interest held by the bank in M.J. Davenport's capital account in Oaks.
40. Davenport contacted Walker and informed him of Hayse's statements, and that he should look for the forthcoming release from Hayse.
The above proposed findings can be compared with those filed on December 14, 1987 by McGlinn and Oaks as follows:
37. In January 1984, Hayse indicated to Davenport that his personal investment in Eagle should be increased.
38. At no time, however, did Hayse indicate to Davenport that the assignment of the capital account in Oaks would be transferred to Landmark Bank of South County, or that he would release the interest held by Landmark Bank of Ladue in M.J. Davenport's capital account in Oaks.
39. Davenport, nevertheless, contacted Walker and informed him that the assignment of the capital account in Oaks held by Landmark Bank of Ladue was reassigned or transferred to Landmark Bank of Sunset Hills, and that Walker should look for a forthcoming release from Hayse.
The parties are in agreement as to the next transaction. On February 29, 1984, Walker sent a letter to Hayse seeking confirmation "that the capital account of Mary J. Davenport in the Oaks Investment Group has been assigned in full to your bank as collateral for a loan." Rodenmeyer executed the acknowledgement block on March 2, 1984 and returned it to Walker. On July 5, 1984, Hayse sent a letter to McGlinn in which he stated:
Please be advised that the undersigned hereby releases all right, title and interest in the Oaks Partnership held by the undersigned on behalf of M.J. Davenport.
After receipt of Hayse's release, Mary Jane Davenport assigned her interest in the capital account in Oaks to ABT. She also executed an assignment of her interest in the custody account at ABT to ABT. As a result, ABT loaned certain funds to the Davenports. In May 1985, Mary Jane Davenport instructed McGlinn to liquidate her accounts, repay whatever monies were owed to ABT and forward to her the balance of the funds. This liquidation was completed in July 1985.
*1504 On January 6, 1986, Pan American drew $100,000 from Landmark Bank pursuant to the letter of credit. Landmark Bank was unable to collect the funds from the Davenports. On June 19, 1986, Landmark Bank requested McGlinn and Oaks to withdraw $100,972.50 from the capital account of the Davenports to pay Landmark Bank. McGlinn and Oaks refused to pay, informing Landmark Bank that there were no assets in Mary Jane Davenport's capital account in Oaks. Thereafter, Landmark Bank filed this action against McGlinn and Oaks to collect the monies it had paid on the letter of credit. McGlinn and Oaks then filed the third-party action against the Davenports.
There are two central factual disputes between the parties: first, whether Kling suggested to Donald Davenport that Davenport consolidate his bank business with Landmark Bank of Sunset Hills, and that Hayse would handle all of Davenport's and Eagle's banking needs; and second, whether Hayse indicated to Davenport that the conditional assignment of Mary Jane Davenport's capital account in Oaks would be transferred to Landmark Bank of South County, and that Hayse would later release the bank's interest in that account.
During the trial, Donald Davenport's testimony was consistent with the proposed findings of fact originally submitted by McGlinn and Oaks. Davenport stated that he understood that all of his financial concerns would be transferred to Landmark Bank of Sunset Hills and that he assumed that the conditional assignment of the Oaks' capital account held by Landmark Bank of Ladue had also been transferred to Landmark Bank of Sunset Hills.
Third-party plaintiffs introduced at trial the deposition testimony of Kling. In his deposition, Kling denied that he ever suggested to Davenport that he consolidate all his banking business within Landmark Banks, or that he ever suggested that William Hayse would personally handle all of Davenport's business. Further, the deposition testimony of Hayse supports third-party plaintiffs' argument that Hayse did not tell Davenport that the assignment of the capital account in Oaks would be transferred to Landmark Bank of South County.
Plaintiff's exhibit 17 shows that in April 1985, a check was drawn on an Eagle account to Landmark Bank of Ladue in payment for the commissions on the letters of credit. McGlinn and Oaks contend that this evidence establishes that Davenport had knowledge that Landmark Bank of Ladue had not transferred to Landmark Bank of Sunset Hills the conditional assignment of the Oaks capital account and the letters of credit.

II. Conclusions of Law.

The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332.

A. Third-Party Defendants' Motion to Dismiss.
Third-party defendants Donald and Mary Jane Davenport filed a post-trial motion to dismiss alleging the collusive joinder of plaintiff and defendants/third-party plaintiffs. Under 28 U.S.C. § 1359, improper or collusive joinder of any party will deny the Court jurisdiction over a matter. As grounds for its motion, the Davenports direct the Court's attention to the settlement agreement entered into between Landmark Bank and McGlinn and Oaks.
On November 30, 1987, the day this case was tried, a settlement agreement was reached between Landmark Bank and McGlinn and Oaks. In that agreement, which the Court approved, judgment was entered in favor of plaintiff Landmark Bank and against defendants McGlinn and Oaks in the amount of $100,000 plus approximately $32,000 in interest and attorney's fees. Thereafter, the Court proceeded with the trial on the third-party complaint.
During the trial, it was disclosed that Landmark Bank and McGlinn and Oaks had entered into another agreement whereby McGlinn and Oaks would pay Landmark Bank $30,000 in satisfaction of the judgment against them, plus they would assign *1505 to Landmark Bank any judgment they received against the Davenports. McGlinn and Oaks further agreed "that they shall utilize their best efforts to expeditiously obtain a final judgment in favor of Oaks and McGlinn and against the Davenports with respect to the Amended Third-Party Complaint." The Davenports contend that this agreement constitutes a waiver of any right McGlinn and Oaks have to indemnity. They further contend that because of the collusive nature of the agreement, the action is essentially one against the Davenports by Landmark Bank. As both Landmark Bank and the Davenports are citizens of Missouri, the Davenports contend the Court lacks diversity jurisdiction under 28 U.S.C. § 1332.
The third-party action against the Davenports was brought pursuant to Fed.R. Civ.P. 14(a), which authorizes such an action against "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." McGlinn and Oaks brought this action against the Davenports alleging negligent representation. The essence of their allegations is that had it not been for the Davenports' negligent representations, McGlinn and Oaks would not have been liable to Landmark Bank.
The Court believes the complaint by McGlinn and Oaks is proper under rule 14. The existence of some other agreement between Landmark Bank and McGlinn and Oaks that provides for the settlement of the judgment against the defendants does not destroy the Court's jurisdiction or the Court's authority to enter a judgment against the Davenports in favor of the third-party plaintiffs. Therefore, the Davenports' motion to dismiss wil be denied.

B. Negligent Misrepresentation.
In Ligon Specialized Hauler, Inc. v. Inland Container Corp., 581 S.W.2d 906 (Mo.App.1979), the Missouri Court of Appeals relied on the Restatement (Second) of Torts § 552 in recognizing the tort of negligent misrepresentation. Based on the holding in that case and its progeny, the plaintiff must establish by a preponderance of the evidence the following elements in a cause of action for negligent misrepresentation: (1) the defendant supplied information in a transaction in which he had a pecuniary interest; (2) because of the failure by the defendant to exercise reasonable care, the information was false; (3) the information was intentionally provided by the defendant in a particular business transaction; and (4) plaintiff relied on the information and thereby suffered a pecuniary loss. Quality Wig. Co. v. J.C. Nichols Co., 728 S.W.2d 611, 618 (Mo.App.1987); AAA Excavating, Inc. v. Francis Constr., Inc., 678 S.W.2d 889, 893 (Mo.App.1984); Springdale Gardens, Inc. v. Countryland Dev., Inc., 638 S.W.2d 813, 816 (Mo.App. 1982).
The evidence clearly establishes that the first, third and fourth elements have been satisfied. It is also clear to the Court that the information supplied by Donald Davenport to McGlinn or his employees concerning the transfer of the assignment of the interest from Landmark Bank of Ladue to Landmark Bank of Sunset Hills was false. The question before the Court, then, is whether Mr. Davenport failed to use reasonable care in determining the accuracy of that information.
There are several discrepancies in the evidence. Davenport testified that Kling encouraged him to consolidate his banking business in Landmark Bank of Sunset Hills, and that Hayse would be his personal banker. Davenport further testified that he understood from Hayse that the assignment of the capital account in Oaks would be transferred to Landmark Bank of Sunset Hills, and then released. Kling and Hayse, through their deposition testimony, contradict the testimony of Davenport.
During 1983 and 1984, Davenport had established a substantial business relationship with Landmark Bank of Sunset Hills. Davenport, as a member of the board of directors of Landmark Bancshares, had a close relationship with Lee Kling, its chairman *1506 of the board. It is also apparent that Davenport worked closely with William Hayse and Daniel Jasper at the Landmark Bank of Sunset Hills. Although exhibit 17 does show that Eagle Converting Corporation made a payment to Landmark Bank of Ladue in April 1985, that occurred more than a year after the statements from Davenport to Walker concerning the release of the conditional assignment.
Davenport could have reasonably believed that the assignment of the capital account in Oaks had been transferred from Landmark Bank of Ladue to Landmark Bank of Sunset Hills. Therefore, the Court finds that McGlinn and Oaks have failed to prove by a preponderance of the evidence that Donald and Mary Jane Davenport did not use reasonable care in determining the truth of any statements made to them.

ORDER
In accordance with the Memorandum filed today,
IT IS HEREBY ORDERED that judgment is entered in favor of third-party defendants Donald L. Davenport and Mary Jane Davenport and against defendants/third-party plaintiffs Terrence J. McGlinn and Oaks Investment Group on the merits of the third-party complaint. Pursuant to 28 U.S.C. § 1920 and local rule 24(C), third-party defendants shall have forty (40) days from the date of this order to file with the Clerk of the Court a verified bill of costs.